DECISION AND JUDGMENT
{¶ 1} Appellant appeals his conviction for forgery and tampering with records entered on a jury verdict in the Lucas County Court of Common Pleas. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} October 21, 2006, a man entered a Columbus, Ohio license bureau office and applied for a duplicate driver's license in the name of Tyru McClendon. The man filled out and signed an application for a duplicate license and presented as identification a damaged Ohio driver's license and a debit card. An employee of a Deputy Registrar of the Ohio Bureau of Motor Vehicles ("BMV") entered the information that the man provided into a BMV computer, took the man's picture and issued him a duplicate license.
 {¶ 3} A BMV investigator later testified that within a few days of the issuance of the duplicate license, she received information that appellant, Christopher McGlown, had obtained an Ohio driver's license in the name of Tyru McClendon. According to the investigator, she then compared the pictures in the BMV system, determining that the picture on the October 21 license did not match that of Tyru McClendon in his original license. The picture did match that of appellant. The investigator placed a fraud alert on the license.
 {¶ 4} On March 17, 2007, Westerville police arrested appellant. On his person was the duplicate license, two debit cards and a Social Security card, all in the name of Tyru McClendon. During a police interview on the same day, appellant admitted that he had used a computer printer to duplicate McClendon's license. According to appellant, he then added his own picture, tore the license in half and presented it to the license branch to obtain an authentic duplicate. *Page 3 
 {¶ 5} On March 29, 2007, a Lucas County grand jury issued a two count indictment, charging appellant with forgery in violation of R.C. 2913.31(A)(3) and a record tampering in violation of R.C. 2913.42 (A)(1) and (B)(4). Appellant was arraigned, entering a plea of not guilty to both counts of the indictment. Counsel was appointed. Trial was set for June 6, 2007. Trial was later rescheduled for August 29.
 {¶ 6} On July 26, appellant's appointed counsel moved to withdraw from representation, citing a "poor quality" of his relationship with appellant. On July 30, the trial court granted counsel's motion to withdraw and appointed substitute counsel. On August 27, the trial judge recused herself and a second judge was assigned to the case. Trial was reset for September 27. On September 25, appellant's second appointed counsel moved to withdraw at appellant's request to permit appellant to employ retained counsel. The trial court did not immediately rule on counsel's request to withdraw, but again rescheduled the trial, this time for October 25. In the meantime, appellant moved to suppress the statements he made during his interview with Westerville police.
 {¶ 7} On October 25, 2007, the trial court delayed voir dire to hear the motion to suppress. At that hearing, appellant appeared without retained counsel and complained about his communication with his appointed counsel. Appellant then said, "I don't want him to represent me. I will go pro se my own self before I have this attorney with me." The court advised appellant that irrespective of whether the matter proceeded with appointed counsel or otherwise, the trial would go forward as scheduled. Ultimately the *Page 4 
trial court denied appellant's request to proceed pro se and appointed counsel represented appellant during trial.
 {¶ 8} The court denied appellant's motion to suppress and the matter continued to a trial before a jury. Appellant was found guilty as charged. The trial court accepted the verdict and sentenced appellant to ten months imprisonment on the forgery count and four years imprisonment for tampering, to be served consecutively.
 {¶ 9} From this judgment of conviction, appellant now brings this appeal. Appellant sets forth the following two assignments of error:
 {¶ 10} "I. The trial court erred in denying appellant's right to represent himself as guaranteed by the Ohio and United States constitutions.
 {¶ 11} "II. Appellant's convictions were against the manifest weight of the evidence."
 I. Self Representation {¶ 12} In his first assignment of error, appellant insists that the trial court deprived him of his Sixth Amendment rights by refusing to permit him to proceed to trial representing himself.
 {¶ 13} "[A] defendant in a state criminal trial has an independent constitutional right of self-representation and * * * may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." State v. Gibson (1976),45 Ohio St.2d 366, paragraph one of the syllabus, citing Faretta v. California (1975),422 U.S. 806. When a defendant properly invokes the right to self-representation, *Page 5 
denial of that right is per se reversible error. State v. Cassano,96 Ohio St.3d 94, 99, 2002-Ohio-3751, ¶ 32, citing State v. Reed(1996), 74 Ohio St.3d 534. Nevertheless, the right is not absolute.State v. Halder, 8th Dist. No. 87974, 2007-Ohio-5940, ¶ 51, quotingUnited States v. Bush (C.A.4, 2005), 404 F.3d 263. The right is waived if it is not timely and unequivocally asserted. Cassano at ¶ 38, quotingJackson v. Ylst (C.A.9 1990), 921 F.2d 882, 888.
 {¶ 14} In the present matter, prior to the suppression hearing appellant complained that the state had decided to abandon an attempt to introduce one piece of evidence and elected to proceed with the DVD of the Westerville interview that appellant sought to suppress. Having not been notified of this change by his trial counsel, appellant insisted, deprived him of the opportunity to acquire retained counsel.
 {¶ 15} The court responded:
 {¶ 16} "All we're talking about is the statement that you made. This case has been continued I don't know how many times. I mean I read through everything because it's kind of a joke to me that we allow cases to be continued this many times. I don't ever allow cases to be continued this many times or for any purpose. I continued it last time at your request because you wanted to get a new attorney, and we're still here for [sic] the same attorney, you're complaining about the attorney. I'm not going to remove [appointed counsel] and I'm not going to continue the trial date today.
 {¶ 17} "[Appellant]: Hold on, your honor. This is one of my first times being here. He filed a motion on the 27th to withdraw and I was supposed to come with an attorney *Page 6 
before the date right here. When he came [and] told me that he wasn't going to use the DVD, I told my mother not to hire an attorney because they said at one point DVD evidence, that was yesterday, and he came back and told me they was going to use it. I didn't get a chance to call my mother. He effectively cost me my rights to retain counsel because his actions telling me they're not going to use a DVD and I want that on the record he filed the withdrawal.
 {¶ 18} "The Court: It's on the record.
 {¶ 19} "[Appellant]: I don't want him to represent me. I will go pro se my own self before I will have this attorney with me.
 {¶ 20} "The Court: That's perfectly fine. I need time to go over the case. I have worked in this building 35 years. There's never been a pro se case where the defendant got a not guilty.
 {¶ 21} "[Appellant]: I understand that.
 {¶ 22} "The Court: [Appointed counsel] is a very good lawyer. I appoint him on pretty serious cases. If you don't want him to represent you, that is wonderful. This case will go a lot quicker, a lot smoother because there will be people asking questions like [appointed counsel.]
 {¶ 23} "If you want to represent yourself, Mr. McGlown, that's your decision. I'll allow you to do that, but it's not in your best interest. You don't know the rules of evidence. You don't know the rules of criminal procedure. You don't know how to ask questions. You don't know [precedents.] Maybe you do, because you've been in court *Page 7 
quite a few times. If you want to represent yourself, we're continuing with the proceedings. As soon as this motion to suppress is over, we're proceeding with trial and we're going to finish this trial today or tomorrow.
 {¶ 24} "[Appellant]: I understand.
 {¶ 25} "* * *
 {¶ 26} "The Court: * * * I'm going to deny your request to represent yourself. You're obviously not in a position represent yourself. [Appointed counsel] is very qualified.
 {¶ 27} "[Appellant]: Do you have a mental evaluation? I'm not about-I'm representing myself."
 {¶ 28} The proceeding then moved into chambers and the court discussed with appellant the ramifications of his rejection of a proposed plea bargain. At the conclusion of this discussion, the court stated to appellant:
 {¶ 29} "I'm not going to allow you to represent yourself. [Appointed counsel] is [a] very well qualified attorney. He's spent much more time on this case that he should have spent. I've spent more time talking to him and the prosecutor about this case than I should've spent. It's easier to try the case, put the evidence on, make a decision. I don't know if you're guilty of this crime. I don't know if you're not guilty of this crime. We're going to try the case. We're going to do it in a very professional manner. Were going to have jurors come up here and make a decision, and whatever happens happens. *Page 8 
 {¶ 30} "I just want you to know that your attorney negotiated for you that you're turning down. You're the one that has to do the time. If that's what your decision is, let's just go out, have the motions, do the trial and see what happens."
 {¶ 31} No further discussion of appellant proceeding pro se ensued.
 {¶ 32} At the least, appellant insists, the trial court should have conducted a hearing to determine whether appellant's election to waive counsel and proceed pro se was knowingly, intelligently and voluntarily made. Absent such a hearing, appellant maintains, we must find that he was denied his Sixth Amendment right of self-representation and reverse his conviction. The same argument was advanced in Cassano, at ¶ 31. We find the analysis employed there instructive.
 {¶ 33} Cassano was accused of stabbing to death his cellmate at the Mansfield Correctional Institution. Following indictment, Cassano filed several pro se motions, including a waiver of counsel. He also asked dismissal of his appointed counsel or leave to act as co-counsel during his trial. Finally, three days before his trial, Cassano asked, "Is there any possibility I could represent myself?" Id. at ¶ 35. The prosecution objected on the ground that if Cassano were permitted to represent himself, it would delay the trial. The court advised Cassano that voir dire would begin the following Monday, but if additional time was needed the court would consider it. Cassano went to trial represented by counsel and did not again mention self-representation.
 {¶ 34} On consideration, the Cassano court concluded that Cassano had not properly raised the issue because he had not submitted a written motion, id. at ¶ 37, failed *Page 9 
to unequivocally and explicitly demand the right, id. at ¶ 38, and the request was untimely "* * * because it was made only three days before the trial was to start." Id. at ¶ 40. The Cassano court also concluded that Cassano had abandoned the issue after being told self-representation was not a good idea. Id. at ¶ 42.
 {¶ 35} The present case may arguably be distinguished fromCassano in a number of respects. Although appellant too made only an oral request for self-representation, he did not have a history of filing written pro se motions as had Cassano. Although appellant's motion to proceed pro se was articulated in the alternative (different counsel or me), it was not stated as a query as Cassano's was. Although appellant eventually went to trial represented by appointed counsel, he had previously reiterated his plea for self-representation after being initially rebuffed and told in no uncertain terms that this was not a good idea.
 {¶ 36} Where we cannot distinguish Cassano is on the issue of timeliness. Appellant first raised the issue of self-representation literally while the venire panel was waiting for voir dire. It is well established that a motion to proceed pro se must be timely interposed. Absent timeliness, a denial of the motion is proper. Cassano at ¶ 40 (three days before trial); State v. Vrabel, 99 Ohio St.3d 184,2003-Ohio-3193, ¶ 50 (day of trial); State v. Randleman (Aug. 20, 1982), 6th Dist. No. L-82-078 (day of trial); State v. Steele,155 Ohio App.3d 659, 665, 2003-Ohio-7103, ¶ 50 (day of trial); Robards v. Rees (C.A.6, 1986), 789 F.2d 379, 384 (day of trial); United States v. Edlemann
(C.A.8, 2006), 458 F.3d 791, 808-09 (five days before trail after several continuances); United States v. *Page 10 Smith (C.A.10, 2005), 413 F.3d. 1253, 1281 (six days before trial);United States v. Mackovich (C.A.10, 2000), 209 F.3d 1227, 1237 (six to ten days before trial); United States v. George (C.A.9, 1995),56 F.3d 1078, 1084 (on the eve of trial).
 {¶ 37} In this matter, the trial court made clear even before appellant raised the issue of self-representation that it disapproved of the number of continuances already granted in this case. After the motion to proceed pro se, a fair reading of the court's comments exhibits a continued concern about delay, eventually leading to a conclusion that appellant's motion was untimely when raised literally minutes before trial. We cannot disagree with this conclusion. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 38} II. Venue
 {¶ 39} In his second assignment of error, appellant maintains that the verdict was against the manifest weight of the evidence in that the state failed to establish the element of venue at trial.
 {¶ 40} Appellant raises a question not so much of manifest weight, but of sufficiency of the evidence. Manifest weight implicates a weighing of the evidence wherein the appellate court acts as a thirteenth juror, assessing whether the jury lost its way with a resulting manifest miscarriage of justice warranting reversal of the conviction. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. In an examination of the sufficiency of the evidence, we must determine whether the evidence presented at trial is legally sufficient to support all of the elements of the offense. Id. at 386-387. The question is *Page 11 
whether the prosecution has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Id. at 390.
 {¶ 41} Appellant insists that, at best, the evidence presented establishes that he went into a license bureau in Columbus, Ohio, and forged another's name on official documents. Since Columbus is located in Franklin County and all acts necessary to establish a criminal offense occurred there, appellant asserts that the state failed to establish venue in Lucas County where he was indicted and convicted. As venue is an element of every crime and the state failed to prove proper venue, then the evidence was insufficient to support his conviction, appellant maintains.
 {¶ 42} R.C. 2901.12(I)(1) provides, in material part:
 {¶ 43} "When the offense involves a computer, computer system, computer network, telecommunication, * * * or information service, the offender may be tried in any jurisdiction containing any location of the computer, computer system, or computer network of the victim of the offense, in any jurisdiction from which or into which, as part of the offense, any writing, data, or image is disseminated or transmitted by means of a computer, computer system, computer network, * * * or information service, or in any jurisdiction in which the alleged offender commits any activity that is an essential part of the offense."
 {¶ 44} The offense in this matter necessarily involved the insertion of fictitious data into the statewide computer network of the Bureau of Motor Vehicles. That system is accessible from terminals in each of Ohio's 88 counties. Thus, proper venue lies in any *Page 12 
of Ohio's counties, including Lucas County where this matter was tried.State v. Cannon (June 30, 1999), 11th Dist. No. 98-L-032. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 45} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, J., Arlene Singer, J. CONCUR. *Page 1